**Danny T. PEALO, Plaintiff,**

v.

**AAF McQUAY, INC., a/k/a McQuay International, Defendant.**

No. 99–CV–1690.

United States District Court, N.D. New York.

May 7, 2001.

---

Leone, Rossi Law Firm (Thomas Leone, of counsel), Auburn, NY, for Plaintiff.

Bond, Schoeneck Law Firm (Thomas G. Eron, of counsel), Syracuse, NY, for Defendant.

## INTRODUCTION

MUNSON, Senior District Judge.

On November 13, 1999, plaintiff filed a complaint claiming gender-based discrimination. Plaintiff was formerly employed by defendant beginning in 1981 as a machine operator and later as a Group Leader. He cites gender and disparate treatment as the causes for his dismissal by defendant in 1996. Defendant denies these allegations and seeks summary judgment alleging nondiscriminatory reasons for plaintiff's termination. Plaintiff opposes the motion. For the following reasons, the court grants defendant's motion for summary judgment.

## BACKGROUND

Plaintiff, Danny Pealo, brings this cause of action under Title VII, 42 U.S.C. § 2000e *et seq.*, and 42 U.S.C. § 1983, claiming discrimination based upon his gender. Plaintiff asserts that defendant unlawfully terminated his employment after he made an innocuous comment to a female employee, who later accused him of sexual harassment. To allay his allegedly discriminatory discharge, plaintiff seeks: (1) declaratory judgment stating that defendant's conduct violated his civil rights; (2) an injunction reinstating plaintiff to his former position during the pendency of this suit; (3) an order of permanent reinstatement; (4) an award of back pay, and retroactive retirement, social security and other benefits; (5) compensatory and puni-

tive damages; and (6) an award for costs, disbursements and attorney's fees.

Defendant, AAF McQuay, Inc., seeks summary judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure. To support this motion, it alleges that plaintiff: (1) lacks standing to pursue his claims; (2) is judicially estopped from proceeding with his claims; and (3) has failed to allege a *prima facie* case for reverse discrimination. Defendant also alleges legitimate nondiscriminatory reasons for plaintiff's termination. The court will address these claims and defenses *seriatim.*

## FACTS

In October of 1981, plaintiff was hired by defendant's corporate predecessor, the Singer Company, to work as a machine operator in its Auburn, New York, manufacturing facility. Defendant is an air conditioner manufacturer which acquired the Auburn facility in 1994. In July of 1995, plaintiff became a Group Leader for Production Line A. Group Leaders are union, non-supervisory employees who are covered by a collective bargaining agreement. As a Group Leader, plaintiff's duties included making work assignments, supervising members of the production line and conducting performance evaluations.

On August 19, 1996, plaintiff had a conversation with a female member of Production Line A, Virginia Ely, in which he commented that she looked tired. Apparently, she attributed her fatigue to her sexual activities from the previous evening. In response, plaintiff asked Ely if she would like to have some "fun" with him in the parking lot.[1] Pealo Dep. at 163. Immediately after making this comment, plaintiff seized Ely's arm and explained that he was only joking.[2] Both individuals

---

**1.** The plaintiff and Ely disagree about the exact content of plaintiff's statement. Ely claims that plaintiff asked to "get laid" by her at lunch. Plaintiff insists that he never used

these specific words during his conversation with Ely.

**2.** Again the parties do not agree about where plaintiff grabbed Ely; she claims that he

continued their normal work functions until August 21, 1996, when Ely filed a formal harassment complaint against plaintiff.

Following an investigation, defendant initially determined that plaintiff violated its sexual harassment policy. On August 27, 1996, company officials further found that plaintiff committed a Class C Violation of its harassment policy and promptly discharged him. After learning of his discharge, on September 12, 1996, plaintiff lodged a discrimination complaint with the Equal Employment Opportunity Commission ("EEOC"), claiming that his termination resulted from gender discrimination. He also contended that he was the subject of disparate treatment as Ms. Ely was not disciplined when she committed a Class C Violation.[3] After receiving the appropriate clearance from the EEOC, plaintiff filed the instant complaint alleging the above claims.

## DISCUSSION

### I. The Legal Standards: Summary Judgment

Summary judgment shall be granted "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits ... show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986). Moreover, Rule 56(c) of the Federal Rules of Civil Procedure mandates the entry of summary judgment "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case,

and on which that party will bear the burden of proof at trial." *Id.* at 247, 106 S.Ct. at 2510. Any ambiguities and inferences drawn from the facts must be viewed in the light most favorable to the non-moving party. *See Thompson v. Gjivoje*, 896 F.2d 716, 720 (2d Cir.1990). However, an alleged or hypothetical factual dispute will not defeat a motion for summary judgment. *See id.* Instead, the nonmoving party must demonstrate that there are genuine factual issues to be decided by the trier of fact. *See id. (citing Celotex Corp. v. Catrett*, 477 U.S. 317, 324–25, 106 S.Ct. 2548, 2553, 91 L.Ed.2d 265 (1986)). An issue is considered "genuine ... if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson*, 477 U.S. at 248, 106 S.Ct. at 2510.

Furthermore, a non-moving party may not rest upon mere conclusory allegations or denials, but must set forth "concrete particulars" showing the need for a trial. *See Connell v. Consolidated Edison Co. of New York*, 109 F.Supp.2d 202, 206 (S.D.N.Y.2000). Therefore, a non-moving party may not "merely ... assert a conclusion without supplying supporting arguments or facts." *See id. (quoting BellSouth Telecommunications, Inc. v. W.R. Grace & Co.*, 77 F.3d 603, 615 (2d Cir. 1996)) (internal quotations omitted).

In the context of employment discrimination cases, summary judgment is "ordinarily inappropriate" because the allegations therein require exploration into an employer's motivation and intent for an employment decision. *See Griffin v. Ambika Corp.*, 103 F.Supp.2d 297, 306

---

clutched her hand to explain his actions; he insists that he touched her arm.

**3.** According to plaintiff, Ely filed her harassment complaint after he disciplined her for threatening another female co-worker. He

claims that Ely's actions also constituted a Class C Violation for which she should have been disciplined. Since it did not punish Ely, plaintiff claims that defendant discriminates against men.

(S.D.N.Y.2000) (*citing Patrick v. LeFevre*, 745 F.2d 153, 159 (2d Cir.1984)); *see also Gallo v. Prudential Residential Servs.*, 22 F.3d, 1219, 1224 (2d Cir.1994). The reason for such judicial caution is that, "[e]mployers are rarely so cooperative as to include a notation in the personnel file that the [adverse employment action] is for a reason expressly forbidden by law." *Bickerstaff v. Vassar College*, 196 F.3d 435, 448 (2d Cir.1999). Yet, summary judgment can still be appropriate in some cases as plaintiff retains the burden of producing evidence from which a reasonable juror could return a favorable verdict. *See Griffin*, 103 F.Supp.2d at 306.

## II. *Standing/Judicial Estoppel*

■ Defendant seeks summary judgment claiming that plaintiff lacks standing to pursue this action. Apparently, plaintiff declared bankruptcy in January of 1997 after he was discharged by the defendant. Unfortunately, plaintiff neglected to declare the instant action as an asset of the bankruptcy estate to the bankruptcy court. As undisclosed assets, such as pending lawsuits, remain the property of the bankruptcy estate, defendant insists that plaintiff has forgone his ability to pursue his claims.

In response, plaintiff admits the failure to disclose the instant suit to the bankruptcy court. In an effort to cure his mistake, plaintiff's counsel has reopened his bankruptcy estate and obtained the Bankruptcy Court's permission to represent the interests of the bankruptcy trustee in the instant action. Moreover, plaintiff and his wife, Tina Pealo, claim to have informed their bankruptcy attorney about the EEOC charge and insist that it was he who failed to make the proper disclosure. *See* Pl. ['s] Aff. at ¶¶ 15–16; Tina Pealo Aff. at ¶ 3; Dkt. Nos. 25 & 24, respectively. They also plead ignorance of the Bankruptcy Code and claim utter reliance upon the expertise of their attorney. For this reason, they maintain that the failure to disclose the instant lawsuit was completely unintentional.

■ Pursuant to 11 U.S.C. § 541, a bankruptcy debtor forfeits all his interests in property to his bankruptcy estate. *See In Re Costello*, 255 B.R. 110, 113 (Bkrtcy. E.D.N.Y.2000). He also has a duty to disclose all his assets in a bankruptcy schedule including all causes of action that can be brought by the debtor. *See id.;* 11 U.S.C. § 521(1). Assets that are not scheduled are not abandoned by the bankruptcy estate and do not revert to the debtor. *See In Re Costello*, 255 B.R. at 113. Therefore, many courts have held that a debtor, such as the plaintiff, lacks the legal capacity to pursue claims that were not disclosed to the bankruptcy estate. *See id.* (citing cases).

In this case, plaintiff admits that he did not disclose the pendency of his EEOC charge to the bankruptcy court. However, it also seems that plaintiff's failure was inadvertent as he relied upon his bankruptcy attorney to make the required disclosures. Furthermore, current counsel has taken corrective action by reopening plaintiff's estate and obtaining the Bankruptcy Court's permission to proceed with the instant claims. In these circumstances, some courts have permitted the pursuit of undisclosed claims in certain circumstances. *See Rosenshein v. Kleban*, 918 F.Supp. 98, 103 (S.D.N.Y.1996) (permitting pursuit of undisclosed claims in order to prevent an alleged wrongdoer from obtaining a windfall); *Greenheart Durawoods, Inc. v. PHF Int'l Corp.*, 1994 WL 652434, at *5 (S.D.N.Y. Nov.18, 1994) (same). Here, the court does not condone plaintiff's failure to disclose his claims, but finds that the reopening of bankruptcy proceedings and the need to prevent a

potential windfall are reasons enough to allow plaintiff to proceed with his claims.[4]

■ Defendant also argues that plaintiff's failure to disclose has estopped him from pursuing his claims. Some courts use what is called the doctrine of judicial estoppel to prevent a debtor from pursuing undisclosed claims, as "the integrity of the bankruptcy system depends on full and honest disclosure by debtors of all their assets." *Rosenshein*, 918 F.Supp. at 104. Application of this doctrine is not warranted in the instant case for the reasons articulated above.

### III. *Title VII: Sex Discrimination*

#### A. *The McDonnell Douglas Standard*

■ The standard to be used in employment discrimination cases has been outlined in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973). Under this standard, a plaintiff is required to establish a *prima facie* case of unlawful employment discrimination by showing that: (1) he is a member of a protected class; (2) he satisfactorily performed his job; (3) he suffered an adverse employment action; and, (4) the action occurred under circumstances giving rise to an inference of discrimination. See *id.* at 802, 93 S.Ct. at 1824; *Graham v. Long Island Railroad*, 230 F.3d 34, 38 (2d Cir.2000). The burden of establishing a *prima facie* case "is not onerous." *Texas Dep't of Community Affairs v. Burdine*, 450 U.S. 248, 253, 101 S.Ct. 1089, 1094, 67 L.Ed.2d 207 (1981).

■ Once plaintiff establishes a *prima facie* case, a rebuttable presumption of discrimination arises and the burden shifts to defendant to present legitimate nondiscriminatory reasons for its actions. *See McDonnell Douglas Corp.*, 411 U.S. at 802, 93 S.Ct. at 1824. If defendant articulates legitimate reasons for its actions, the presumption of discrimination is rebutted, and "simply drops out of the picture." *St. Mary's Honor Ctr. v. Hicks*, 509 U.S. 502, 510–11, 113 S.Ct. 2742, 2749, 125 L.Ed.2d 407 (1993). Then, the burden shifts back to plaintiff to prove that the employer's actions were actually motivated by discriminatory intent and its allegedly legitimate reasons are merely pretextual. *See McDonnell Douglas Corp.*, 411 U.S. at 804, 93 S.Ct. at 1825.

#### B. *The Reverse Discrimination Standard*

■ In the instant case, defendant contends that plaintiff's claims must be dismissed for failure to establish a *prima facie* case. To support this position, defendant applies a standard of proof often used in cases involving reverse discrimination. Normally, to establish a *prima facie* case for discrimination, a plaintiff must satisfy the *McDonnell Douglas* standard articulated above. However, in reverse discrimination cases some courts apply a heightened standard wherein a plaintiff must show that the defendant is the "unusual employer who discriminates against the majority." *See Olenick v. New York Telephone/A NYNEX Co.*, 881 F.Supp. 113, 114 (S.D.N.Y.1995). Unfortunately, the district courts in this Circuit disagree about whether this heightened burden is appropriate in light of the Supreme Court's instruction that Title VII " 'proscribe[s] racial discrimination . . . against whites on the same terms as racial discrimination against nonwhites.' " *Ticali v. Roman Catholic Diocese of Brooklyn*, 41 F.Supp.2d 249, 261 (E.D.N.Y.1999) (*quoting McDonald v. Santa Fe Trail Transp. Co.*, 427 U.S. 273, 279, 96 S.Ct. 2574, 2578, 49 L.Ed.2d 493 (1976)); *Cully v. Milliman*

---

**4.** The court also notes that the Bankruptcy Court specifically appointed plaintiff's counsel to represent the interests of the bankruptcy estate in this action.

*& Robertson, Inc.,* 20 F.Supp.2d 636, 640–641 (S.D.N.Y.1998) (same).

Although the Second Circuit has not specifically resolved the issue, it has implied that the *McDonnell* standard should apply in reverse discrimination cases. Specifically, the Circuit has applied the *McDonnell* burden shifting standard to claims of reverse discrimination. *See Stern v. Trustees of Columbia Univ.,* 131 F.3d 305, 314 (2d Cir.1997) (applying the *McDonnell* standard in an employment discrimination case asserted by a Caucasian male). Although this decision does not explicitly resolve the issue, this court, like so many others, is unwilling to apply the heightened burden analysis absent clear direction from the Second Circuit—especially in light of existing, albeit bladed, precedent. For this reason, the court will address defendant's contention that plaintiff failed to establish a *prima facie* case under the *McDonnell* standard.

To bolster its claims, defendant contends that plaintiff has not shown that his discharge occurred under circumstances giving rise to an inference of discrimination.[5] Instead, it maintains that he was discharged pursuant to its sexual harassment policy for conduct which he admits having committed. Additionally, defendant insists that plaintiff failed to identify any female employee who committed the same action but was not discharged by the company. For these reasons, defendant contends that plaintiff cannot demonstrate any facts that infer gender discrimination.

After reviewing his claims, the court agrees that plaintiff has not established a *prima facie* case for gender discrimination. Plaintiff's sole claim is one for disparate treatment. Specifically, he claims that his accuser, Ms. Ely, violated the identical section of defendant's harassment policy when she threatened a fellow employee. Plaintiff insists that defendant's failure to discharge Ms. Ely for violating its harassment policy is proof of disparate treatment. The court cannot agree.

Although it is clear that Ms. Ely violated company policy, the scope of her misconduct is far different from that levied against plaintiff as she was not charged with sexual harassment. The fact that Ms. Ely's conduct violates the same section of defendant's harassment policy does not automatically imply discrimination as there is no implication that Ms. Ely's threats were sexual in nature. In order to establish a *prima facie* case for discrimination based upon disparate treatment, it is necessary for plaintiff to show that he was treated differently from a female employee charged with sexual harassment. Absent such evidence, plaintiff has failed to present even the smallest inference that his termination resulted from discrimination. While the court recognizes that the plaintiff's *prima facie* burden is minimal, the record contains simply no evidence that plaintiff is the victim of gender discrimination.

### C. *Pretext*

 Even if plaintiff could establish a *prima facie* case, he has not offered any proof that defendant's nondiscriminatory

---

**5.** As previously stated, to establish a *prima facie* discrimination case a plaintiff must show that: (1) he is a member of a protected class; (2) he satisfactorily performed his job; (3) he suffered an adverse employment action; and, (4) the action occurred under circumstances giving rise to an inference of discrimination. In this case, defendant claims that plaintiff has not satisfied the first and fourth *prima facie* requirements. The court will only discuss the fourth element herein as defendant challenged the first requirement based upon the heightened *prima facie* standard. Moreover, it is unnecessary to discuss the first element as the court finds that the circumstances of this case do not give rise to an inference of discrimination.

reason for his discharge is a mere pretext for discrimination. As previously stated, if a plaintiff establishes a *prima facie* case, a rebuttable presumption of discrimination arises and the burden shifts to defendant to present legitimate nondiscriminatory reasons for its actions. If defendant meets this burden, plaintiff must then show that the allegedly legitimate reasons are a mere pretext to discrimination. To do this, plaintiff must "produce not simply 'some' evidence, but 'sufficient evidence to support a rational finding that the legitimate, non-discriminatory reasons proffered by the [defendant] were false, and that more likely than not [discrimination] was the real reason for the [employment action].'" *Weinstock v. Columbia University*, 224 F.3d 33, 42 (2d Cir.2000) (*quoting Van Zant v. KLM Royal Dutch Airlines*, 80 F.3d 708, 714 (2d Cir.1996)).

In this case, defendant claims that plaintiff has not rebutted its nondiscriminatory reason for his dismissal because he offers no proof that the stated reason, sexual harassment, was false or untrustworthy. Moreover, it contends that there is no evidence from which a jury could reasonably infer discrimination. To support these claims, defendant maintains that the evidence herein shows that plaintiff sexually harassed Ms. Ely despite being aware of the company's strictly enforced harassment policy. It also reiterates that plaintiff failed to identify any female employee who was not discharged after being accused of sexual harassment. For these reasons, defendant contends that plaintiff failed to show that its nondiscriminatory reason for his discharge is pretextual.

Plaintiff does not specifically respond to defendant's assertions, but offers the failure to discipline Ms. Ely as proof of pre-text. Specifically, he states that a jury could infer discrimination from the failure to discharge Ely. He also claims that defendant's motion for summary judgment should be denied because the failure to discipline Ely creates a question of fact. Plaintiff does nothing further to adequately explain how this failure creates a question of fact.

Despite plaintiff's ardent beliefs, the court finds that he has failed to show that defendant's nondiscriminatory reason for discharge is a pretext for discrimination. As stated above, plaintiff must present proof that he was treated differently from a female employee also accused of sexual harassment. As Ely was not accused of sexual harassment, plaintiff has not established that his discharge was due to gender discrimination rather than Ely's harassment charge.[6] Therefore, defendant's motion for summary judgment is granted and the complaint dismissed.

## IV. *Section 1983 Claims*

Although plaintiff also contends that defendant's actions violated his constitutional rights, the complaint contains absolutely no allegations to support this allegation. For this reason, these claims are also dismissed.

**WHEREFORE,** for the foregoing reasons, it is hereby

**ORDERED,** that defendant's motion for summary judgment is **GRANTED** and the complaint is hereby **DISMISSED.** It is further

**ORDERED,** that the Clerk of the Court serve a copy of this Memorandum–Deci-

---

**6.** Defendant also seeks to dismiss an allegation by plaintiff that he was sexually harassed. In response, plaintiff states that he has not made any claim for sexual harassment. For this reason, it is unnecessary for the court to discuss defendant's arguments regarding this phantom claim.

sion and Order upon the parties by regular mail.