**In re Scott BERCU, Debtor.**

**Julie Kagan and Saborax, Ltd., Plaintiffs,**

**v.**

**Scott Bercu, Defendant.**

**Bankruptcy No. 02–03556–9P7. Adversary No. 02–459.**

United States Bankruptcy Court, M.D. Florida, Ft. Myers Division.

May 9, 2003.

Edward R. Miller, Naples, FL, for defendant.

Marshall L. Cohen, Fort Myers, FL, for plaintiff.

## FINDINGS OF FACT, CONCLUSIONS OF LAW AND MEMORANDUM OPINION

ALEXANDER L. PASKAY, Bankruptcy Judge.

The matter before this Court in the Chapter 7 case of Scott Bercu (Debtor) is a claim of nondischargeability of a debt alleged to be owed by the Debtor to Julie Hagerty Kagan (Ms. Hagerty) and Saborax, Ltd. (Saborax), both of whom commenced this adversary proceeding.

Although Ms. Hagerty, in the original complaint filed on June 7, 2002, set forth several claims of nondischargeability, the original complaint was dismissed with leave granted to amend. The amended complaint, filed on August 21, 2002, similar to the original complaint was dismissed, with leave granted to amend. The Second Amended Complaint, filed on October 17, 2002, set forth only two counts. Pursuant to an Order of this Court, entered on November 26, 2002, this Court dismissed Count I with prejudice and dismissed a portion of Count II with prejudice but permitted the embezzlement claim to remain. This is the only claim remaining unresolved concerning the nondischargeability asserted by Ms. Hagerty, based on Section 524(a)(4) of the Code.

At the duly scheduled final evidentiary hearing, the following facts relevant and germane to the claim of embezzlement were established. The Debtor is a Certified Public Accountant (CPA). He began his career as a CPA at the firm of Hecht & Company (Hecht). Initially, he was employed as a junior accountant but, in time, advanced to the position of senior accountant. Ultimately, he became the supervisor of the department of accounting for Hecht.

Ms. Hagerty is a known stage and film actress, and has been featured in motion pictures such as Airplane I and II; and on the TV series such as the Princesses and Everybody Loves Raymond. She was a client of Hecht since 1983. In 1984, the Debtor was assigned to handle the affairs of Ms. Hagerty. Particularly, he was placed in charge of handling all of her financial affairs: to pay her bills, to collect her income, and to follow up on royalties, which were due to her from all of her various contracts. He assisted Ms. Hagerty in obtaining loans by shopping for the best and most favorable terms.

Ms. Hagerty handled her affairs through a corporation known as Saborax. The bank account involved in this controversy was maintained by Saborax, on which the Debtor had signatory power. All of her earnings from acting were deposited into this particular account and the Debtor drew checks on this account. He paid Ms. Hagerty's bills as they became due; to the extent funds were available.

The Debtor left Hecht in August of 1993, and set up his own firm under the name of Scott Bercu, L.C., which was later changed to Bercu & Co., CPAs. Ms. Hagerty terminated her relationship with Hecht and retained the Debtor's firm to handle her financial affairs. It is without dispute that when he established his own firm, the Debtor handled Ms. Hagerty's financial affairs in the same manner as he did while he was and employed by Hecht.

This relationship was quite loose and informal, in that the Debtor did not regularly bill Ms. Hagerty for his services and that Ms. Hagerty appears to have never complained of this arrangement. In fact, during the entire time they were associated with each other from August 1993 until January 1998, or some four and one half

years, the Debtor only billed Ms. Hagerty on very few occasions. In fact, out of a fifty-four month period, she was billed only fifteen times. According to the Debtor, he only billed her when there were sufficient funds in the account of Saborax to pay the bill.

Just as before, the Debtor again opened a checking account for Saborax, this time at a different bank, the Republic National Bank of New York (Republic). All bank statements from Republic and all cancelled checks were sent to the Debtor's office. All bills received were also forwarded to the Debtor's office, kept in the Debtor's office, and not sent to Ms. Hagerty's residence. In the year 1996, the Debtor paid himself for services rendered in the amount of $11,000. In the year 1997, he also received the sum of $10,000. All monies came out of the Saborax bank account. It also appears that the Debtor loaned money from time to time to Ms. Hagerty, or paid on her behalf car payments, although there was no documentary evidence presented to support this claim. According to the Debtor, Ms. Hagerty owes the Debtor the between $30,000–$35,000. The total payment received during the fifty-seven months appears to be a little over $20,000.

This record leaves no doubt that Ms. Hagerty either was unwilling or incapable of handling her own financial affairs and was basically constantly broke. The fact of the matter is that on June 18, 1998, Ms. Hagerty filed a voluntary Petition for Relief under Chapter 7 in the Bankruptcy Court of the Central District of California. (Db.Ex. 1). In her Schedule of Unsecured Non-priority Claims, Ms. Hagerty scheduled her debts in the total amount of $309,250. She scheduled the Debtor as a creditor in the amount of $75,000, with the basis stated as a potential liability of the Debtor for indemnity or contribution on certain promissory notes to Republic. However, the Schedule of Assets failed to state a potential claim against the Debtor based on the claim, which she is now asserting, which is the basis of her nondischargeability claim. The relationship between the Debtor and Ms. Hagerty terminated in January of 1998.

At the trial, counsel for Ms. Hagerty spent considerable time establishing that the Debtor did not perform competently and that he overcharged Ms. Hagerty for his services. This Court is satisfied that there was no evidence presented at the trial that the Debtor embezzled any funds from Ms. Hagerty.

Basically, these are the salient facts established at the final evidentiary hearing based on which Ms. Hagerty contends that the debt in the amount of $100,000, represented by proof of claim no. 7, claimed to be owed to her by the Debtor should be excepted from the overall protection of the general bankruptcy discharge based on Section 524(a)(4) of the Code. In the post-brief submission, Ms. Hagerty sought to be excepted from the general discharge the sum of $20,000.

Before considering the law applicable to the resolution of the ultimate issue, i.e. the validity of the claim of embezzlement, there are two preliminary issues, which have to be considered and resolved. The first involves the standing of Saborax to maintain this challenge of the dischargeability claim of the Debtor. The standing issue, raised by the Debtor, is based on the undisputed fact the Saborax, a Delaware corporation, was dissolved by the State of Delaware, on June 1, 2000, for its failure to pay the franchise taxes on March 1, 2000.

It is uniformly recognized that the right of a corporation to sue is governed by the State of incorporation. *In re*

*ABZ Ins. Services, Inc.,* 245 B.R. 255 (Bankr.N.D.Tex.2000); *Casselman v. Denver Tramway Corporation,* 195 Colo. 241, 577 P.2d 293 (1978). Thus, in the present instance the laws of the State of Delaware govern the standing of Saborax to be able to sue. Section 278 of Delaware Corporation Law provides that

> All corporations, whether they expire by their own limitation or are otherwise dissolved, shall nevertheless be continued, for the term of 3 years from such expiration or dissolution[.] ... [W]ith respect to any action, suit or proceeding begun by or against the corporation either prior to or within 3 years after the date of its expiration or dissolution, the action shall not abate by reason of the dissolution of the corporation.

*See Johnson v. Helicopter & Airplane Services Corp.,* 404 F.Supp. 726 (D.Md.1975).

Florida law likewise echoes the laws of Delaware, governing the right of a dissolved corporation to sue. It does not require a corporation, which has been dissolved for failure to file annual reports, to seek reinstatement before it can sue. *National Judgment Recovery Agency v. Harris,* 826 So.2d 1034 (Fla. 4th DCA 2002). Based on the foregoing, this Court is satisfied that Saborax has standing to maintain this action commenced on June 9, 2002, which is well within the three year grace period.

 The next issue raised by the Debtor, before the ultimate issue should be considered, is the applicability of the doctrine of judicial estoppel. The doctrine of judicial estoppel is equitable in nature and is invoked at the court's discretion only to prevent the perversion of the judicial process by precluding a party from "asserting a claim in a legal proceeding that is inconsistent with a claim taken by that party in a previous proceeding." *Burnes v. Pemco Aeroplex, Inc.,* 291 F.3d 1282 (11th Cir.

2002). Courts consider two factors in the application of judicial estoppel. First, it must be shown that the allegedly inconsistent positions were made under oath in a prior proceeding; and second, such inconsistencies must be shown to have been calculated to make a mockery of the judicial system. *Burnes,* 291 F.3d at 1287; *Salomon Smith Barney, Inc. v. Harvey,* 260 F.3d 1302 (11th Cir.2001).

 In considering the application of this doctrine, a court must consider all of the circumstances and facts relevant to the intent of the party against whom the doctrine sought to be invoked. *Burnes,* 291 F.3d at 1286. In the present instance, the invocation of the doctrine of judicial estoppel is based on the undisputed fact that Ms. Hagerty in her own bankruptcy case, failed to disclose on her Schedule of Assets, her claim against the Debtor, which clearly would have been property of her bankruptcy estate pursuant to Section 541(a) of the Code.

It is without dispute that bankruptcy counsel represented Ms. Hagerty in her bankruptcy case filed in California. There is no evidence in this record to establish that she told her attorney of this potential claim against the Debtor; or that she willfully and intentionally concealed this potential claim from her attorney. Neither is there any evidence, which warrants the finding that her attorney explained to her the legal definition of a claim and the duty to disclose even unliquidated or merely potential claims on the Schedule of Assets. Ms. Hagerty is seriously dyslexic, never graduated from high school, and is totally unsophisticated in finances. In spite of her earnings as an actress, which was quite substantial, she was constantly broke. Outside of her focus on her career as an actress, she was totally oblivious and ignorant of all matters involving controlled sensible budgeting and apparently never

gave much thought to consider the limits of her funds available to meet her high standard of living.

It is fair to assume that she relied on her attorney in the preparation of the Petition and all documents required to be filed pursuant to F.R.B.P. 1007. Her reliance was justified. Reliance on advise of counsel, especially by an unsophisticated debtor, bespeaks against the application of the doctrine. *Pealo v. AAF McQuay, Inc.,* 140 F.Supp.2d 233 (N.D.N.Y.2001). There is no evidence in this record, which would warrant the finding that her failure to schedule this claim against the Debtor was a deliberate attempt to conceal from the court and from creditors a claim, the value and the viability of which at that time she filed her bankruptcy case in California, was highly questionable and uncertain.

It is well established that doctrine is an extraordinary remedy to be applied only when there is evidence of an intentional and deliberate manipulation. *Ryan Operations G.P. v. Santiam–Midwest Lumber Co.,* 81 F.3d 355 (3rd Cir.1996); *New Hampshire v. Maine,* 532 U.S. 742, 121 S.Ct. 1808, 149 L.Ed.2d 968 (2001).

In sum, based on this record and the principles which govern the doctrine of judicial estoppel, this Court is satisfied that it would be inappropriate to apply the doctrine and the same is not a bar to the claims of both Saborax and Ms. Hagerty. This leads to the ultimate issue which is the claim of nondischargeability, based on the charge of embezzlement which if established would except the liability of the Debtor from the overall protection of the general bankruptcy discharge pursuant to § 523(a)(4) of the Code.

■■■■■ It is well established that to establish a viable claim of nondischargeability, the burden is on the plaintiff to present creditable evidence with a preponderance of the evidence and the standard is no longer clear and convincing. *Grogan v. Garner,* 498 U.S. 279, 287, 111 S.Ct. 654, 112 L.Ed.2d 755 (1991). Nevertheless, it is still essential to prove the essential elements of an embezzlement. These elements are (1) appropriation of funds by the debtor; (2) for the debtor's use or benefit; and (3) with fraudulent intent. *In re Jenkins,* 110 B.R. 74 (Bankr.M.D.Fla.1990); *In re Beckett,* 96 B.R. 366, 368 (Bankr. M.D.Fla.1989).

■■■■ Courts are uniform in the interpretation of Section 523(a)(4) of the Code that a finding of nondischargeability of a debt arising through embezzlement does not require a fiduciary relationship between the plaintiff and the debtor/defendant. *In re Rebhan,* 45 B.R. 609 (Bankr. S.D.Fla.1985), *aff'd,* 842 F.2d 1257 (11th Cir.1988); *In re Crosswhite,* 91 B.R. 156 (Bankr.M.D.Fla.1988).

■■■■ Although in several states, embezzlement as such has been incorporated into a claim of larceny, in the context of Bankruptcy, embezzlement requires a showing of property rightfully in the position of a non-owner, and a non-owner's appropriation of the property or use other than for what it was entrusted with the intent to permanently deprive the owner of the property. *In re Littleton,* 942 F.2d 551 (9th Cir.1991); *In the Matter of Burgess,* 106 B.R. 612 (Bankr.D.Neb.1989).

■■■■ In the present instance, the thrust of Ms. Hagerty's complaint is nothing more than a claim that the Debtor overcharged her for his services. To substantiate this contention, Ms. Hagerty presented an expert witness from New York, who testified that the charges made by the Debtor were grossly excessive and substantively greater than is commonly charged for similar work in New York City. Assuming for the purpose of discus-

sion that this Court accepts this testimony, it proves nothing more than that the Debtor overcharged Ms. Hagerty. The fact of the matter is that on cross-examination, Ms. Hagerty flatly denied that the Debtor "stole" any money from her, and merely overcharged her. This is a far cry in establishing embezzlement, which is the sole basis to except the debt claimed to have been owed to her by the Debtor, within the exception of Section 523(a)(4) of the Code.

Based on the foregoing, this Court is satisfied that Ms. Hagerty failed to establish with the requisite degree of proof a viable claim of exception to discharge under Section 523(a)(4) of the Code.

Accordingly, it is

ORDERED, ADJUDGED AND DECREED that Count II of the Second Amended Complaint be, and the same is hereby, dismissed with prejudice.