**In re Don J. WADDELL and Lena A. Waddell, Debtors.**

**Lena Rumore, Plaintiff,**

**v.**

**Dale Wamstad, Defendant.**

**Bankruptcy No. 00–51494SEG.**
**Adversary No. 01–05214SEG.**

United States Bankruptcy Court,
S.D. Mississippi,
Southern Division.

April 1, 2004.

---

330

Michael Hudson Ellis, Metairie, LA, Paula Anne Perrone, Robert Hugh Matthews, New Orleans, LA, for Plaintiff.

Byron Franklin Martin, New Orleans, LA, Craig M. Geno, Jackson, MS, for Defendant.

## OPINION

EDWARD R. GAINES, Bankruptcy Judge.

The matter before the court is the motion to dismiss filed in the above styled adversary proceeding by the defendant, Dale Wamstad ("Wamstad"). Wamstad requests dismissal of the action, originally filed in Jefferson Parish, Louisiana, by his ex-wife, Lena Rumore ("Rumore"), the debtor herein,[1] subsequently removed to federal district court in Louisiana and transferred to this court as this adversary proceeding. Dismissal is requested on the basis of judicial estoppel. Having considered the pleadings, the testimony of the parties, and the memoranda submitted by counsel, the court concludes that the motion to dismiss should be denied based on the following.

Also before the court is the cross motion for abstention filed by the trustee, H.S. Stanley, Jr. The court concludes, as stated herein, that the cross motion should be granted and that the matter should be remanded to the Twenty Fourth Judicial District Court for the Parish of Jefferson, State of Louisiana, for appropriate proceedings.

### I. FACTUAL BACKGROUND

In November of 1995, Lena Rumore filed a petition for damages against her former husband, Dale Wamstad, in the 24th Judicial District Court for the Parish of Jefferson, State of Louisiana. Summary judgment was granted by the Louisiana trial court in favor of the defendant, Dale Wamstad, and the matter was appealed by Rumore to the Court of Appeal of Louisiana, Fifth Circuit. The appeal was successful and the summary judgment was reversed. The defendant, Wamstad, filed a writ to the Louisiana Supreme Court that was denied. Wamstad removed the matter to the United States District Court for the Eastern District of Louisiana and the matter was subsequently transferred to this court by the Louisiana District Court.

On April 10, 2000, Rumore and her husband at that time filed a joint petition for relief under Chapter 7 of Title 11 of the United States Code in the United States Bankruptcy Court for the Southern District of Mississippi, in the names of Don J. Waddell and Lena A. Waddell. Bankruptcy Schedules and the Statement of Financial Affairs were prepared by the staff in the office of the debtors' bankruptcy attorney, Rickey Hemba, signed by the debtors and filed with the court. The debtors' schedules reflected $83,434.00 in unsecured claims. In Schedule B of the bankruptcy schedules the debtors responded "None" to the question requiring listing of any "Other contingent and unliquidated claims of every nature, including tax refunds, counter claims of the debtor, and the rights to setoff claims." The debtors also responded "None" to the question requiring listing of "Alimony, maintenance, support and property settlements, to which the debtor is or may be entitled." In the Statement of Financial Affairs the debtors responded "None" to the question requiring the debtors to "List all suits and administrative proceedings to which the debtor is or was a party within one year immediately preceding the filing of this

---

1. Lena Ann Rumore and Dale Wamstad were married in 1962 and divorced in 1980. They remarried in 1981, were judicially separated in 1987 and subsequently divorced. Rumore married Don J. Waddell in 1994 and was married to him at the time they filed a joint Chapter 7 petition in April of 2000, in the names of Don J. Waddell and Lena A. Waddell. The marriage to Don J. Waddell also ended in divorce and Lena Waddell resumed the name Lena Rumore. The plaintiff-debtor is referred to herein as "Rumore".

bankruptcy case." As discussed below, unrefuted testimony at the hearing on the motion to dismiss confirmed that Rumore and her divorce attorney, Paula Perrone, at various times advised either Hemba or his bankruptcy paralegal of the litigation in Louisiana and were told it was not important.

On August 4, 2000, a discharge was entered in the Waddells' Chapter 7 bankruptcy case. An order was entered approving the trustee's report of no distribution and closing the estate on the same date.

On September 11, 2001, a motion to reopen the bankruptcy was filed by Rumore's ex-husband, Wamstad. The motion indicated that on November 3, 1995, Rumore filed a petition for damages in the 24th Judicial District Court for the Parish of Jefferson, State of Louisiana.[2] In February, 1999, the trial court granted Wamstad's motion for summary judgment, and in March of 1999, Rumore filed an appeal to the Court of Appeal of Louisiana, Fifth Circuit. On February 8, 2000, the Court of Appeal reversed the Louisiana trial court's judgment and remanded. The suit was pending in April of 2000[3] when Rumore and her husband filed a joint Chapter 7 petition in the United States Bankruptcy Court for the Southern District of Mississippi. The motion to reopen alleged that the debtors never disclosed the existence of the Louisiana lawsuit despite their statutory obligation to do so. The movant, Wamstad, indicated that he did not learn of the bankruptcy case until March of 2001, the year after it was filed. The motion urged that Rumore's failure to disclose the lawsuit appeared to be inconsistent with her continued pursuit of that lawsuit. The bankruptcy case was reopened by order dated September 18, 2001.

On October 1, 2001, the defendant, Wamstad, removed the state court case to the United States District Court for the Eastern District of Louisiana pursuant to 28 U.S.C. §§ 1452 and 1334. On November 13, 2001, the Louisiana District Court entered an order transferring the case to this court, where it is now pending as the above styled adversary proceeding.

On December 18, 2001, Wamstad filed his motion to dismiss Rumore's action against him based upon the doctrine of judicial estoppel for failure to disclose the claims against Wamstad in her bankruptcy proceeding and having concealed a contingent asset from her creditors. The debtors filed a response to the motion denying the allegations. The trustee, H.S. Stanley, Jr., filed a Response to Defendant's Motion to Dismiss and Cross–Motion for Abstention. The trustee stated that the debtor, Rumore, had a pending state court action as to the defendant, Wamstad, wherein she sought relief from the division

---

**2.** The petition for damages stated that Rumore and Wamstad entered a settlement, partitioning their community property on November 6, 1992, that was made a judgment on November 18, 1992. Rumore averred therein that the judgment should be found null and void on several bases, including fraud, and she should be awarded damages for Wamstad's alleged fraudulent actions. The petition claims that Wamstad intentionally misrepresented to Rumore the assets and liabilities of the community, claiming there was little or no value. The petition further claims that after the partition Wamstad sold a

chain of steak houses owned by the community for approximately twenty-three million dollars. The petition was subsequently amended. A fourth amended petition was filed in February of 2001.

**3.** After reversal of the trial court's judgment, Wamstad filed a writ to the Louisiana Supreme Court that was denied in May of 2000, the next month after the April bankruptcy petition and schedules were filed by Rumore and her husband.

of community property arising from a divorce granted in Louisiana. The trustee further stated that the cause of action constitutes property of the bankruptcy estate pursuant to 11 U.S.C. § 541. The trustee urged that judicial estoppel is inapplicable and that the claim and cause of action constitutes an asset that the trustee should be entitled to pursue for the benefit of the creditors of the bankruptcy estate. The trustee noted that the action involves Louisiana law and Louisiana community property rights. He further stated that, "pursuant to 28 USC Section 1334(c)(1), permissive abstention or, alternatively, pursuant to 28 USC Section 1334(c)(2) mandatory abstention would be proper, to allow the debtor and trustee, through special counsel, to continue to prosecute said claim in the Louisiana state court forum, for and on behalf of the trustee and the debtor, as their respective interests may appear. The above referenced adversary proceeding should be remanded to the Twenty Fourth Judicial District Court for the Parish of Jefferson, State of Louisiana, for appropriate proceedings therein." Trustee's Response to Defendant's Motion to Dismiss and Cross–Motion for Abstention at 2–3. The motion to dismiss filed by Wamstad was ultimately heard in this bankruptcy court.

Rumore testified that she told her bankruptcy attorney, Rickey Hemba, about the lawsuit she had filed against Wamstad and that it had been appealed to the Louisiana Supreme Court. She indicated that she asked if the lawsuit might be the type of thing the statement of financial affairs and the bankruptcy schedules were referring to, and that he responded that it was not, since it was something that had been going on with her ex-husband for fifteen years. She further testified that she gave Hemba a copy of a Dallas newspaper article from March of 2000, that discussed the lawsuit. Rumore testified that she did not know the bankruptcy schedules could be amended. She did state, however, that she contacted "Tina", the bankruptcy paralegal at Hemba's office, asking if there was anything she should do to correct the schedules and that she was told "no" by the paralegal and that it was finished.

Rumore also testified that Joseph Barbknecht, her attorney in a defamation suit brought against her by Wamstad, advised her after a deposition in July of 2001, that her bankruptcy schedules might need to be amended. She testified that she contacted Hemba's office at that time and again spoke with the bankruptcy paralegal who said that nothing needed to be done.

Rumore further testified there would be no reason to hide the fact that she would get millions from what her former husband owed her if successful in the lawsuit and that she would be more than happy to pay the creditors of her bankruptcy estate the approximately eighty five thousand dollars ($85,000.00) in unsecured claims; there would be no problem in paying all of the creditors; and that she would "love" to have been able to pay them. She testified that the lawsuit sought damages of at least ten million dollars.

Rumore testified that she met with Paula Perrone, her attorney in the Louisiana lawsuit, in December of 2000, and that Perrone was made aware for the first time that Rumore had filed a bankruptcy earlier that year. Perrone testified that she was lead counsel in the Louisiana lawsuit in which Rumore sought an equitable share of the community estate of Dale Wamstad which was estimated to be in the millions of dollars. Perrone wrote a letter to Hemba, Rumore's bankruptcy attorney, on December 18, 2000, discussing the existence of the lawsuit and the issue of disclosure of the lawsuit in the bankruptcy case. The letter was admitted into evidence as De-

fendant's Exhibit # 10. Perrone's letter expressed Rumore's concern over whether her lawsuit seeking to annul her original partition judgment was correctly reported to the bankruptcy court. Defendant's Exhibit # 11 is the facsimile transaction report indicating the transmission to Hemba was successfully accomplished. Defendant's Exhibit # 12 is a redaction from Perrone's law firm's telephone bill showing a charge to the telephone number noted in the facsimile transaction report approximately two minutes prior to the transaction report. Perrone stated that she attempted to get in touch with Hemba by telephone and was unable to contact him. She then asked Rumore to follow up with Hemba's office. Perrone testified that Rumore reported the substance of the conversation Rumore had with "Tina", the bankruptcy paralegal in Hemba's office, following Perrone's letter to Hemba. Tina stated that Rumore didn't need to do anything further and that the matter was taken care of.

Perrone testified regarding the history of the lawsuit stating that summary judgment was granted in Dale Wamstad's favor by the state court in February of 1999. Rumore appealed the decision in March of 1999. In February of 2000, the intermediate court of appeal in Louisiana reversed the summary judgment order of the trial court. On April 10, 2000, the same day Rumore filed her bankruptcy petition and schedules, Wamstad filed an appeal with the Louisiana Supreme Court. One month later, in May of 2000, Dale Wamstad's writ was denied in the Louisiana Supreme Court.

Attorney Rickey Hemba testified that if Rumore had told him what was going on regarding the Louisiana litigation, he would probably have told her that he did not want the case and would have sent her somewhere else because he prefers to do no-asset cases. He further testified that the lawsuit should have been disclosed in the bankruptcy schedules and that he would not have told her that she did not need to disclose it. He testified that the first time he learned of the existence of the lawsuit was when he spoke with Perrone on the telephone after Wamstad filed the motion to reopen the case in September, 2001. He stated that it was the first time he realized or was informed that money was involved, and that it was long after the bankruptcy had been filed and the discharge granted. Hemba stated he did not remember whether or not he and Rumore ever talked about her lawsuit. He stated that he was not saying that she didn't mention it, but just that he didn't remember. He further testified that his file did not reflect a letter from Perrone. He said that there were no newspaper articles in his file; that she had brought him some; he thought he threw them away; and that he remembered one from the Clarion Ledger about her shooting her husband.

Hemba offered to amend the schedules after the motion to reopen was filed and was advised by the trustee and his attorney that it would not be necessary since the trustee was then aware of the Louisiana proceeding.

H.S. Stanley, Jr., the Trustee, testified that it was not his standard procedure in May of 2000, the time the meeting of creditors was scheduled in Rumore's bankruptcy case, to inquire at the meeting as to whether a debtor had undisclosed suits or damage claims.

After the hearing was concluded, post trial briefs were submitted by the parties regarding the application of the doctrine of judicial estoppel to the facts of this case.

## II. CONCLUSIONS OF LAW

The court has jurisdiction over the parties and the subject matter pursuant to 28 U.S.C. § 1334.

Federal law is to be applied where judicial estoppel is considered based on a debtor's failure to disclose assets in bankruptcy. *See, Kamont v. West,* 83 Fed. Appx. 1, 2003 WL 22477703 (5th Cir.2003); *Burnes v. Pemco Aeroplex, Inc.,* 291 F.3d 1282 (11th Cir.2002). *See also, Browning Manufacturing v. Mims (In re Coastal Plains, Inc.),* 179 F.3d 197 (5th Cir.1999), *cert. denied,* 528 U.S. 1117, 120 S.Ct. 936, 145 L.Ed.2d 814 (2000)(Bankruptcy Code and Rules impose upon bankruptcy debtors an express, affirmative duty to disclose all assets). Application of judicial estoppel is a matter of regional circuit law. *See, Minnesota Mining and Manufacturing Company v. Chemque, Inc.,* 303 F.3d 1294 (Fed.Cir.2002).[4]

In the case of *Browning Manufacturing v. Mims (In re Coastal Plains, Inc.),* 179 F.3d 197 (5th Cir.1999), *cert. denied,* 528 U.S. 1117, 120 S.Ct. 936, 145 L.Ed.2d 814 (2000), the Fifth Circuit Court of Appeals stated the following regarding the doctrine of judicial estoppel:

> Judicial estoppel is "a common law doctrine by which a party who has assumed one position in his pleadings may be estopped from assuming an inconsistent position". *Brandon v. Interfirst Corp.,* 858 F.2d 266, 268 (5th Cir.1988). The purpose of the doctrine is "to protect the integrity of the judicial process", by "prevent[ing] parties from playing fast and loose with the courts to suit the exigencies of self interest". *Id.* (internal quotation marks, parentheses, and citation omitted). Because the doctrine is intended to protect the judicial system, *rather than the litigants,* detri-

mental reliance by the opponent of the party against whom the doctrine is applied is not necessary. *See Matter of Cassidy,* 892 F.2d 637, 641 & n. 2 (7th Cir.), *cert. denied,* 498 U.S. 812, 111 S.Ct. 48, 112 L.Ed.2d 24 (1990).

> "The policies underlying the doctrine include preventing internal inconsistency, precluding litigants from playing fast and loose with the courts, and prohibiting parties from deliberately changing positions according to the exigencies of the moment." *United States v. McCaskey,* 9 F.3d 368, 378 (5th Cir.1993). The doctrine is generally applied where "intentional self-contradiction is being used as a means of obtaining unfair advantage in a forum provided for suitors seeking justice". *Scarano v. Central R. Co.,* 203 F.2d 510, 513 (3d Cir.1953).

> Most courts have identified at least two limitations on the application of the doctrine: (1) it may be applied only where the position of the party to be estopped is clearly inconsistent with its previous one; and (2) that party must have convinced the court to accept that previous position.

> . . .

> And, many courts have imposed the additional requirement that the party to be estopped must have acted intentionally, *not inadvertently.*

> . . . .

*Id.* at 205–06 (footnotes omitted)(emphasis added). *See also, Karaha Bodas Co., L.L.C. v. Perusahaan Pertambangan Minyak Dan Gas Bumi Negara,* 364 F.3d 274 (5th Cir.2004)(noting two limitations on judicial estoppel identified in Fifth Circuit

---

4. The court in *Minnesota* stated that the law of the Fifth Circuit applied in the case before them. The Court cited *Browning Manufacturing v. Mims (In re Coastal Plains, Inc.),* 179 F.3d 197 (5th Cir.1999), *cert. denied,* 528 U.S. 1117, 120 S.Ct. 936, 145 L.Ed.2d 814 (2000), as articulating the theory behind judicial estoppel and cited the Supreme Court decision in *New Hampshire v. Maine,* 532 U.S. 742, 121 S.Ct. 1808, 149 L.Ed.2d 968 (2001), wherein it listed factors for consideration.

courts). The court further commented regarding "inadvertence":

Our review of the jurisprudence convinces us that, in considering judicial estoppel *for bankruptcy cases,* the debtor's failure to satisfy its statutory disclosure duty is "inadvertent" only when, *in general,* the debtor either lacks knowledge of the undisclosed claims *or has no motive for their concealment.*

*Id.* at 210. (emphases added). *See also, New Hampshire v. Maine,* 532 U.S. 742, 121 S.Ct. 1808, 149 L.Ed.2d 968 (2001)(the court did not question that it may be appropriate to resist application of judicial estoppel when a party's prior position was based on inadvertence or mistake).

■ More recently, the Fifth Circuit noted in *Hall v. GE Plastic Pacific PTE Ltd.,* 327 F.3d 391 (5th Cir.2003), a non-bankruptcy case, an additional factor considered by the Supreme Court:

In this Circuit, "two bases for judicial estoppel" must be satisfied before a party can be estopped. *Ahrens,* 205 F.3d at 833. First, it must be shown that "the position of the party to be estopped is clearly inconsistent with its previous one; and [second,] that party must have convinced the court to accept that previous position." *Id. . . .*

In *New Hampshire,* the Supreme Court outlined three "non-exclusive" factors that "typically inform the decision whether to apply the doctrine in a particular case." 532 U.S. at 750, 121 S.Ct. 1808, 149 L.Ed.2d 968. In addition to the two factors primarily relied on in this Circuit and already discussed, the Supreme Court articulated a third, "whether the party seeking to assert the inconsistent position would derive an unfair advantage or impose an unfair detriment on the opposing party if not estopped." *Id.* at 751, 532 U.S. 742, 121 S.Ct. 1808, 149 L.Ed.2d 968.

*Id.* at 396, 399. The Supreme Court made the following remarks regarding factors to consider in determining applicability of judicial estoppel:

Courts have observed that "[t]he circumstances under which judicial estoppel may appropriately be invoked are probably not reducible to any general formulation of principle," . . . Nevertheless, several factors typically inform the decision whether to apply the doctrine in a particular case: . . .

In enumerating these factors, we do not establish inflexible prerequisites or an exhaustive formula for determining the applicability of judicial estoppel. Additional considerations may inform the doctrine's application in specific factual contexts. In this case, we simply observe that the factors above firmly tip the balance of equities in favor of barring New Hampshire's present complaint.

*New Hampshire v. Maine,* 532 U.S. 742, 750–51, 121 S.Ct. 1808, 1815, 149 L.Ed.2d 968 (2001) (citations omitted).[5]

■ In determining applicability of the doctrine of judicial estoppel to the facts of

**5.** Regarding the general application of the doctrine of judicial estoppel, the court in *Taylor v. Comcast Cablevision of Arkansas, Inc.,* 252 F.Supp.2d 793 (E.D.Ark.2003) commented that, "An overly strict application of judicial estoppel has been criticized as providing a windfall to the alleged wrongdoer and possibly depriving creditors, who are not parties to the nonbankruptcy action, of a potential bankruptcy asset." *Id.* at 798. *See also,* *Kagan v. Bercu (In re Bercu),* 293 B.R. 806 (Bankr.M.D.Fla.2003)(the doctrine is an extraordinary remedy to applied only when there is evidence of an intentional and deliberate manipulation); *Burnes v. Pemco Aeroplex, Inc.,* 291 F.3d 1282 (11th Cir. 2002)(courts must always give due consideration to all circumstances of a particular case in considering applicability of judicial estoppel).

this case, the court initially considers the two bases the Fifth Circuit has identified. First, the position of the party to be estopped is clearly inconsistent with its previous position, and second, that the party must have convinced the court to accept the previous position. Additionally, the Fifth Circuit noted that inadvertence may be considered where the debtor lacks knowledge of the undisclosed claim or has no motive for concealment.

 There is no dispute that Rumore did not disclose the previously filed lawsuit against Wamstad in her bankruptcy schedules or statement of financial affairs and that the position taken in the schedules and statements is inconsistent with the continuation of the lawsuit against Wamstad. However, according to unrefuted testimony and evidence, her bankruptcy attorney or his paralegal was informed of the claim and did nothing to amend the schedules. Since the testimony reflects that the debtor and her Louisiana counsel notified the bankruptcy attorney or his paralegal of the lawsuit in an attempt possibly to amend schedules, and that this was done long prior to the time in which the defendant, Dale Wamstad, filed his motion to reopen the bankruptcy case and his motion to dismiss the lawsuit against him,

there is some question as to whether the position taken by the debtor in her bankruptcy proceeding was inconsistent with the lawsuit based on the documented attempts to correct that position. *See, Browning Manufacturing v. Mims (In re Coastal Plains, Inc.)*, 179 F.3d 197, 208 (5th Cir.1999), *cert. denied*, 528 U.S. 1117, 120 S.Ct. 936, 145 L.Ed.2d 814 (2000), (debtor must amend schedules if circumstances change); *Kamont v. West*, 83 Fed. Appx. 1, 2003 WL 22477703 (5th Cir. 2003)(court applied judicial estoppel and noted that Kamont never amended her petition to include administrative complaints of employment discrimination); *Breauxsaus v. First Mississippi Capital Corporation (In re Breauxsaus)*, 304 B.R. 273 (Bankr.N.D.Miss.2003)(court noted that debtor never amended bankruptcy schedules to disclose claims against banks as assets of estate and held that actions should be precluded).

The court next considers whether the party convinced the court to accept the previous position. The entry of the discharge in Rumore's bankruptcy case is evidence of the court having been convinced that there were insufficient assets to distribute to the creditors of the bankruptcy estate.[6]

6. *See also, Browning Manufacturing v. Mims (In re Coastal Plains)*, 179 F.3d 197 (5th Cir. 1999), *cert. denied*, 528 U.S. 1117, 120 S.Ct. 936, 145 L.Ed.2d 814 (2000), where the court indicated that judicial estoppel is intended to prevent fraud where claims are concealed and a discharge obtained:

As the First Circuit aptly stated in *Payless Wholesale Distributors, Inc. v. Culver Inc.*, 989 F.2d 570 (1993):

The basic principle of bankruptcy is to obtain a discharge from one's creditors in return for all one's assets, except those exempt, as a result of which creditors release their own claims and the bankrupt can start fresh. Assuming there is validity in [debtor's] present suit, it has a better plan. Conceal your claims; get rid of your creditors

on the cheap, and start over with a bundle of rights. This is a palpable fraud that the court will not tolerate, even passively. [Debtor], having obtained judicial relief on the representation that no claims existed, can not now resurrect them and obtain relief on the opposite basis.

989 F.2d at 571.

*Id.* at 213. *See also, Heckler v. Product Development Corporation*, 2002 WL 824091 (N.D.Tex.2002)(discharge from bankruptcy is a motive for concealment of claims); *Casey v. Peco Foods, Inc.*, 297 B.R. 73 (S.D.Miss.2003)(indicated there can be no question but that the bankruptcy court relied on the debtor's disclosure statements when approving her no asset discharge).

In any event, the failure to disclose is considered by this court to have been inadvertent under the facts of this case. As stated in *Browning Manufacturing v. Mims (In re Coastal Plains, Inc.),* 179 F.3d 197 (5th Cir.1999), *cert. denied,* 528 U.S. 1117, 120 S.Ct. 936, 145 L.Ed.2d 814 (2000), the Fifth Circuit held that "in considering judicial estoppel *for bankruptcy cases,* the debtor's failure to satisfy its statutory disclosure duty is 'inadvertent' only when, in general, the debtor either lacks knowledge of the undisclosed claims *or* has no motive for their concealment." *Id.* at 210.[7] Although, there is no dispute that Rumore had knowledge of the claim since she was the plaintiff in the lawsuit, the court finds from the evidence and testimony that no motive for concealment has been shown. The efforts by Rumore and by her Louisiana attorney, Perrone, to inquire of Rumore's bankruptcy attorney whether the schedules needed to be corrected to list the claim are inconsistent with any motive for concealment. Additionally, the lawsuit was apparently widely publicized. Rumore testified that she told her bankruptcy counsel of a newspaper article about the suit. He could not deny this and did mention that she brought in several newspaper articles although he did not read them. These factors are also inconsistent with an attempted concealment. The amount of the debt listed in the bankruptcy schedules of $83,434.00 is minimal compared to the millions involved in the lawsuit. There would not appear to be any motive for concealment of the suit in order to obtain discharge of so small an amount of debt in comparison to what she might gain in the litigation, and the evidence did not establish such a motive. Additionally, Rumore testified that she would have been glad to pay her debts and there was no reason to hide the lawsuit.

7. Some courts have held that inadvertence may be established where a debtor relied on their attorney in preparation of the bankruptcy schedules. *See, Kagan v. Bercu (In re Bercu),* 293 B.R. 806 (Bankr.M.D.Fla.2003)(reliance on advice of counsel bespeaks against application of the doctrine); *Pealo v. AAF McQuay Inc.,* 140 F.Supp.2d 233 (E.D.N.Y.2001)(plaintiff's failure was inadvertent as he relied on bankruptcy attorney to make necessary disclosures). However, the case of *Casey v. Peco Foods, Inc.,* 297 B.R. 73 (S.D.Miss.2003), a court within the Fifth Circuit, indicated this was not allowable under *Browning Manufacturing v. Mims (In re Coastal Plains, Inc.),* 179 F.3d 197 (5th Cir.1999), *cert. denied,* 528 U.S. 1117, 120 S.Ct. 936, 145 L.Ed.2d 814 (2000):

> Moreover, the court specifically held that the type of "inadvertence" claimed by this plaintiff, i.e., inadvertence resulting from ignorance of bankruptcy disclosure requirements and consequent reliance on one's bankruptcy attorney for guidance and advice, "is not the type that precludes judicial estoppel against plaintiff ... from asserting in the instant litigation the previously nondisclosed claim." *Id.* at 212....
>
> As in *Coastal Plains,* Casey's claim that her bankruptcy attorney failed to inform her about her statutory duty to disclose is irrelevant ... there is otherwise no basis for concluding that Casey's omissions were inadvertent. That is, it cannot be said that Casey lacked knowledge of her potential claim ... Further, it is undisputed that Casey had a motive to conceal her claim. Had the claim been reported to the bankruptcy court, any recovery on such claim would potentially have become subject to distribution by the bankruptcy court to Casey's creditors. Thus, by not disclosing this claim, Casey was able to secure a discharge of her debts, while keeping the full benefit of any potential recovery on the ... claim to herself.

*Id.* at 77–78. In the case before this court, the court considers dealings the debtor had with her bankruptcy attorney or his paralegal not for purposes of establishing inadvertence, but for purposes of considering Rumore's motive and her intent in the way the schedules were prepared. *See, Wakefield v. SWS Securities, Inc. (In re Wakefield),* 293 B.R. 372 (N.D.Tex.2003)(assessment of motive not to disclose must include subjective considerations).

As an additional factor in determining whether to apply the doctrine of judicial estoppel, the Supreme Court in *New Hampshire v. Maine*, 532 U.S. 742, 121 S.Ct. 1808, 149 L.Ed.2d 968 (2001), considered whether the party seeking to assert an inconsistent position would derive an unfair advantage or impose an unfair detriment on the opposing party if not estopped. *Id.* at 751, 121 S.Ct. 1808. The court concludes that under the facts of this case, Rumore would not derive an unfair advantage if not estopped, and there would not be imposed upon Dale Wamstad an unfair detriment. To the contrary, the reverse would be the case in the event Rumore is able to prove the allegations of fraudulent conduct and concealment on the part of Wamstad raised in the petition for damages filed against him. An advantage Rumore arguably may have had would have been a discharge of her debts with a subsequent judgment in her favor against Wamstad and the ability to pay those discharged debts. However, the reopening of her case and the appearance of the trustee in the lawsuit negates any unfair advantage in this respect because the debts will be paid in the event of a recovery. Moreover, the unfair advantage in this respect, if any, would not be in relation to the opposing party, i.e. Wamstad, but would be to parties that are not part of the lawsuit between Rumore and Wamstad. Furthermore, the facts of this case do not suggest there would be any unfair detriment imposed upon Wamstad if Rumore is not estopped. The bankruptcy petition and discharge had nothing to do with Wamstad and did not affect him since he was not a creditor of the bankruptcy estate.[8]

In considering the circumstances of this case, the testimony of Rumore and her Louisiana attorney, Perrone, and the demeanor of all the witnesses, the court is compelled to conclude that the doctrine of judicial estoppel should not be applied to the facts of this unusual case and that Rumore and the trustee should be allowed to proceed with the litigation.[9]

In this court's opinion, even if the doctrine of judicial estoppel should be applied in this case to preclude the debtor from pursuing the lawsuit, the trustee

---

**8.** The point being considered here is unfair advantage or unfair detriment and is distinguishable from the separate point that privity and detrimental reliance are not required in judicial estoppel cases. *See, Burnes v. Pemco Aeroplex, Inc.*, 291 F.3d 1282 (11th Cir.2002).

**9.** The court distinguishes this case from the facts in *Casey v. Peco Foods, Inc.*, 297 B.R. 73 (S.D.Miss.2003) where judicial estoppel was applied to preclude the debtor from pursuing litigation. In that case, the debtor asserted that she should be allowed to reopen her bankruptcy case to amend the filings and appoint a trustee as real party in interest in her suit. The court indicated that allowance of an amendment only after challenged by an adversary, suggests that a debtor should consider disclosing potential assets *only if caught concealing them*. *See also, Burnes v. Pemco Aeroplex, Inc.*, 291 F.3d 1282 (11th Cir.2002). The testimony in connection with the motion to dismiss now before the court established that although the debtor, Rumore, did receive a discharge while a pending lawsuit was not disclosed in her bankruptcy proceeding, there were good faith attempts by Rumore and her litigation attorney to make the disclosure prior to the time that her opponent knew about her bankruptcy and prior to the time when he subsequently filed the motion to have the proceeding dismissed. If "motive" were always to be considered satisfied where the debtor obtained a discharge, then that prong of the inadvertence standard would effectively never be an element in bankruptcy cases. There could be some question as to whether this was the Fifth Circuit's intent in *Browning Manufacturing v. Mims (In re Coastal Plains, Inc.)*, 179 F.3d 197 (5th Cir.1999), *cert. denied*, 528 U.S. 1117, 120 S.Ct. 936, 145 L.Ed.2d 814 (2000), since they did, in fact, list motive as a separate prong in bankruptcy cases.

should not be estopped and should be allowed to proceed.[10] *See, In re Huggins,* 305 B.R. 63 (Bankr.N.D.Ala.2003), *reh'g granted* (Jan. 15, 2004) (the debtor's judicial estoppel does not estop the trustee from recovery to the extent of filed proofs of claim, fees and expenses). *See also, Ingalls v. Erlewine (In re Erlewine),* 349 F.3d 205, 210 (5th Cir.2003)(the trustee is not bound either on res judicata or judicial collateral estoppel by prior state court proceedings).

The Court concludes that the motion to dismiss filed by Dale Wamstad should be denied and that Rumore and the Trustee should be allowed to proceed with the lawsuit against Dale Wamstad.[11]

Additionally, the Court agrees with the assertions made in the Trustee's Cross Motion for Abstention noting that the action now before the court involves Louisiana law and Louisiana community property rights. The Court concludes that the Cross Motion should be granted pursuant to 28 U.S.C. § 1334 and that the matter should be remanded to the Twenty Fourth Judicial District Court for the Parish of Jefferson, State of Louisiana, for appropriate proceedings thereon. An order to this effect should be entered after entry of an order adding the trustee as a party plaintiff.

An order will be entered consistent with these findings and conclusions pursuant to Federal Rule of Bankruptcy Procedure 9021 and Federal Rule of Civil Procedure 58. This opinion shall constitute findings and conclusions pursuant to Federal Rule of Bankruptcy Procedure 7052 and Federal Rule of Civil Procedure 52.

10. *But see, Parker v. Wendy's International, Inc.,* 2003 WL 23350445 (11th Cir. March 31, 2004)(disagreed with trustee's argument that judicial estoppel would not bar him even if it barred plaintiff).

11. *Wieburg v. GTE Southwest Incorporated,* 272 F.3d 302 (5th Cir.2001)(the trustee is the proper party interest to prosecute claim).