Leneldon **GALLOWAY**, Plaintiff

v.

**BOND, BOTES & STOVER, P.C.** and **William A. Grafton, Individually,** Defendants.

Civil Action No. 3:08CV218TSL–JCS.

United States District Court, S.D. Mississippi, Jackson Division.

Oct. 27, 2008.

Carey R. Varnado, Montague, Pittman & Varnado, Hattiesburg, MS, for Plaintiff.

Edward J. Currie, Jr., William W. McKinley, Jr., Currie, Johnson, Griffin, Gaines & Myers, Jackson, MS, for Defendants.

## MEMORANDUM OPINION AND ORDER

TOM S. LEE, District Judge.

This cause is before the court on the motion of plaintiff Leneldon Galloway for abstention and/or remand, and the motion of defendants Bond, Botes & Stover, P.C, and William A. Grafton to dismiss. These motions have been fully briefed by the parties, and the court, having considered the memoranda of authorities, together with attachments, submitted by the parties, concludes that plaintiff's motion to abstain and/or remand should be denied, and defendants' motion to dismiss should be granted.

In October 2004, less than a month after suffering a debilitating on-the-job injury, plaintiff hired an attorney, William Grafton and his law firm, Bond Botes & Stover (BBS), to file a petition for Chapter 13 bankruptcy protection. The petition was filed October 17, 2004. Subsequently, in October 2005, while his bankruptcy case was still pending, Galloway filed suit in this court against Stinger Wellhead Protection, seeking to recover damages based on allegations that his injuries were proximately caused by Stinger's negligence, *Galloway v. Stinger Wellhead Protection, Inc.* In April 2006, Stinger moved for summary judgment on Galloway's complaint, arguing that Galloway could not establish the essential elements of his claim against Stinger, but arguing alternatively that the court should hold Galloway was judicially estopped from pursuing his claim as a consequence of having failed to disclose and/or having concealed his claim from the bankruptcy court in his pending bankruptcy case. The court agreed, and on July 10, 2006, dismissed Galloway's lawsuit on the basis of judicial estoppel. *See Galloway v. Stinger Wellhead Protection, Inc.,* 446 F.Supp.2d 655 (S.D.Miss.2006).

On March 6, 2008, Galloway filed the present lawsuit in Hinds County Circuit Court against his bankruptcy attorneys, Grafton and the BBS law firm, alleging that their professional negligence in the handling of his bankruptcy case caused this court's dismissal of his lawsuit against Stinger. Specifically, Galloway alleges that after he hired an attorney to file a personal injury lawsuit against Stinger, he notified Grafton and BBS of his lawsuit against Stinger. Plaintiff asserts that although BBS promised to amend Galloway's bankruptcy schedules to account for the *Stinger* case as an asset in his bankruptcy, BBS failed to amend the bankruptcy schedules, and Stinger used this failure as grounds to have his lawsuit against it summarily dismissed.

Defendants timely removed Galloway's malpractice complaint on the basis of bankruptcy jurisdiction under 28 U.S.C. § 1334, following which Galloway promptly filed his motion for mandatory abstention pursuant to 28 U.S.C. § 1334(c)(2), or for discretionary abstention and/or equitable remand pursuant to 28 U.S.C. § 1334(c)(1) and § 1452(b), respectively. Defendants responded in opposition to plaintiff's motion, and moved to dismiss plaintiff's complaint on the basis of collateral estoppel.

### Jurisdiction/Abstention

Section 1334 lists four types of matters over which the district court has bankruptcy jurisdiction: (1) cases under title 11; (2) proceedings "arising under" title 11; (3) proceedings "arising in" a case under title 11; and (4) proceedings "related to" a case under title 11. *See* 28 U.S.C. § 1334 (providing "the district court shall have original and exclusive jurisdiction of all cases under title 11," and "shall have original but not exclusive jurisdiction of all civil proceedings arising under title 11, or arising in or related to cases under title 11"); *In re Wood,* 825 F.2d 90, 92 (5th Cir.1987).

Defendants assert jurisdiction in this case under the "arising in" category.[1]

Plaintiff has not directly challenged this court's subject matter jurisdiction. Instead, he argues only that the court is required to abstain and remand based on the doctrine of mandatory abstention established by 28 U.S.C. § 1334(c)(2), or, alternatively, that even if mandatory abstention does not apply, the court should exercise its discretion to abstain and remand, pursuant to the doctrines of discretionary abstention and equitable remand.[2]

■ Under the doctrine of mandatory abstention, the federal courts, in "non-core" proceedings, are required to abstain from hearing a state law claim for which there is no independent basis for federal jurisdiction other than § 1334(b) "if an action is commenced, and can be timely adjudicated, in a State forum of appropriate jurisdiction." *Davis v. Life Investors Ins. Co. of America*, 282 B.R. 186, 190 (S.D.Miss.2002) (quoting *In re Gober*, 100 F.3d 1195, 1206 (5th Cir.1996)); *see also In re Southmark Corp.*, 163 F.3d 925, 929 n. 2

(5th Cir.1999) (statutory criteria for mandatory abstention include that the proceeding is non-core, a state-law cause of action, no other basis for federal court jurisdiction, and the pendency of state court litigation that can timely adjudicate the claim). In response to plaintiff's motion, while they do not challenge the other criteria for mandatory abstention, defendants maintain that this is a "core proceeding," and that consequently, mandatory abstention does not apply.

Pursuant to 28 U.S.C. § 157(b)(1), "[b]ankruptcy judges may hear and determine all cases under title 11 and all core proceedings arising under title 11, or arising in a case under title 11 ... and may enter appropriate orders and judgments." Although the statute does not define core proceedings, subsection (b)(2) provides a nonexclusive list of examples, and in addition, the courts have held that " § 157 equates core proceedings with the categories of 'arising under' and 'arising in' proceedings." *In re U.S. Brass Corp.*, 301 F.3d 296, 304 (5th Cir.2002). *See also In re Wood*, 825 F.2d at 97 ("If the proceed-

---

1. "[C]ases under title 11," to which § 1334(a) refers, is "the bankruptcy petition itself, over which district courts (and their bankruptcy units) have original and exclusive jurisdiction." *In re Wood*, 825 F.2d 90, 92 (5th Cir.1987); 28 U.S.C. § 1334(a). Under 28 U.S.C. § 157, the district courts are authorized to, and in practice, have referred all cases "under title 11" to the bankruptcy courts. *See* 28 U.S.C. § 157(a) ("Each district court may provide that any or all cases under title 11 and any or all proceedings arising under title 11 or arising in or related to a case under title 11 shall be referred to the bankruptcy judges for the district."). An "arising under" proceeding "involves a right created by the federal bankruptcy law." *Id.* at 97. This case fits neither category.

2. As plaintiff denies this court has "arising in" jurisdiction, his failure to seek dismissal for lack of subject matter jurisdiction may reflect his impression that the case is at least "related to" his earlier bankruptcy (notwith-

standing that defendants have not so claimed). In light of the court's conclusion, *infra*, that there is "arising in" jurisdiction, the court need not decide whether it also has "related to" jurisdiction.

The court would note, too, that while it may seem more direct to address the question whether plaintiff's claim qualifies as "arising in" his bankruptcy case as a question of subject matter jurisdiction, the court considers it as part of plaintiff's mandatory abstention motion, as that is how it has been presented to the court by the parties. *See In re Simmons*, 205 B.R. 834, 840 n. 11 (Bkrtcy. W.D.Tex.1997) (describing this approach as "analytically confusing" but not "per se wrong," because a determination whether a matter is "core" or "non-core" for purposes of a mandatory abstention analysis requires the court to decide whether the matter is one that "arises in" or "arises under" a title 11 proceeding).

ing is one that would arise only in bankruptcy, it is also a core proceeding....").

A proceeding "arises in" a case under title 11 if, by its very nature, it could arise only in the context of a bankruptcy case or, in other words, it is a proceeding which would have no existence outside of the bankruptcy context. *See In re Wood*, 825 F.2d at 97; *In re Rodriguez*, 396 B.R. 436, 449 (Bkrtcy.S.D.Tex.2008) (stating "a matter arises in a case under title 11 if it, 'by its nature, could arise only in the context of a bankruptcy case'") (citation omitted); *see also In re U.S. Brass Corp.*, 301 F.3d at 304 ("[A] 'proceeding is core under section 157 if it invokes a substantive right provided by title 11 or if it is a proceeding that, by its nature, could arise only in the context of a bankruptcy case.'").

Nearly all courts to have considered the issue have held that a debtor's or trustee's suit against his attorneys or other estate professionals alleging malpractice in a bankruptcy case is a core proceeding, reasoning that where the malpractice occurs in the bankruptcy proceeding itself, the alleged malpractice could not have occurred "but for" the bankruptcy and thus the claim "arises in" the bankruptcy. *See, e.g., In re Southmark Corp.*, 163 F.3d at 932 (holding that "professional malpractice claims against court-appointed professionals are indeed core matters."); *In re Seven Fields Dev. Corp.*, 505 F.3d 237, 260 (3d Cir.2007) (holding that malpractice action against accountant approved by bankruptcy court for misconduct during bankruptcy upon which bankruptcy judge relied in confirming plan of reorganization and on which the bankruptcy court approved the fees to the accountants, was a core proceeding); *In re Earned Capital Corp.*, 331 B.R. 208, 218 (Bkrtcy.W.D.Pa. 2005) (concluding that claims of professional malpractice against accountant based on services provided during the bankruptcy, under the supervision of, and subject to the approval of, the bankruptcy court, and which "implicate[d] the integrity of the bankruptcy process," was a core proceeding); *In re Simmons*, 205 B.R. 834, 841 (Bkrtcy.W.D.Tex.1997) (observing that "matters falling into the category [of "arising in" jurisdiction] must at the very least be of a sort that *could not have occurred but for the bankruptcy*," and finding that former Chapter 11 debtor's post-confirmation "claims of malpractice which originated out of pre- and post-petition advise of counsel concerning the *bankruptcy itself* are matters that fall within 'arising in' jurisdiction"); *Joe Conte Toyota, Inc. v. Howell*, No. CIV.A. 97–0686, 1997 WL 222410, 1–2 (E.D.La. Apr. 30, 1997) (holding that "a debtor's suit against its attorneys alleging malpractice before the bankruptcy court is a core proceeding"); *In re Diversified Contract Servs., Inc.*, 167 B.R. 591, 595 (N.D.Cal.1994) (finding jurisdiction over former trustee's legal malpractice claim against attorney based on "arising in" language, as the challenged legal representation "arose in connection with the bankruptcy case" and, in fact, "was committed at and in connection with a hearing before the bankruptcy court," so that it was "ludicrous to contend that such claims could arise outside a bankruptcy case"); *In re Billing*, 150 B.R. 563, 566 (D.N.J.1993) (holding that post-confirmation malpractice claim against debtor's former bankruptcy attorneys provided "arising in" jurisdiction where "the allegations supporting the claim ... are entirely unique to the bankruptcy law (and) the bankruptcy proceeding was obviously the *sine qua non* of the malpractice action"), *rev'd on other grounds, Billing v. Ravin, Greenberg & Zackin, P.A.*, 22 F.3d 1242 (3d Cir.1994); *In re Jackson*, 118 B.R. 243, 244–245 (E.D.Pa.1990) (con-

cluding that claim of malpractice against debtor's bankruptcy attorneys for advising the debtors to file bankruptcy at all when they had sufficient assets to cure the defaults and for various additional acts of negligence in the course of the bankruptcy, qualified as "arising in" the bankruptcy case and hence was a core proceeding); *In re SPI Communications & Mktg., Inc.*, 112 B.R. 507, 510–511 (Bankr.N.D.N.Y.1990) (finding that chapter 7 trustee's legal malpractice claim on behalf of debtor against debtor's bankruptcy attorney for unauthorized consent to conversion from chapter 11 to chapter 7 was core proceeding) [3]; *cf. Matter of Murphy*, 213 B.R. 813, 816 (Bkrtcy. S.D.Miss.1997) (exercising "arising in" jurisdiction over creditor's third-party complaint against its attorneys for malpractice allegedly giving rise to trustee's claim against creditor); *In re Midstate Mtg. Investors Group, LP*, No. 06–2581(FLW), 2006 WL 3308585 (D.N.J. 2006) (concluding that third-party complaint against debtor's counsel for indemnification and contribution by counsel for Creditors Committee (who had themselves been sued for legal malpractice), was a core proceeding as the claim was based on allegations that debtor's attorney had committed a fraud on the bankruptcy court and hence could have arisen only in the context of a bankruptcy case); *Rheem Mfg. Co. v. Cheatham*, 132 B.R. 323 (E.D.La.1991) (finding that suit by creditor against its attorney was not related to the bankruptcy, but commenting that if the suit had been brought by the debtor it would be a core proceeding).

Some of these cases have involved attorneys or other estate professionals who were appointed by the bankruptcy court. Indeed, in *In re Southmark Corp.*, the fact that the claim involved dereliction of the duties owed to the bankruptcy estate by a court-appointed and -approved professional was prominently noted in the court's analysis:

> A *sine qua non* in restructuring the debtor-creditor relationship is the court's ability to police the fiduciaries, whether trustees or debtors-in-possession and other court-appointed professionals, who are responsible for managing the debtor's estate in the best interest of creditors. The bankruptcy court must be able to assure itself and the creditors who rely on the process that court-approved managers of the debtor's estate are performing their work, conscientiously and cost-effectively. Bankruptcy Code provisions describe the basis for compensation, appointment and removal of court-appointed professionals, their conflict-of-interest standards, and the duties they must perform. *See generally* 11 U.S.C. §§ 321, 322, 324, 326–331. Although standards for the conduct of court-appointed professionals, the breach of which may constitute bankruptcy malpractice, are not comprehensively expressed in the statute, the Code need not duplicate relevant, also-applicable state law. It is evident that a court-appointed professional's dereliction of duty could transgress both explicit Code responsibilities and applicable professional malpractice standards.

**3.** In *Arroyo v. Wilson*, Nos. C 97–3800, BK–N–92–32001–JHT, 1998 WL 34635 (N.D.Cal. 1998), the court held that a debtor's legal malpractice claim against his former attorney for failing to enroll a judgment the debtor had obtained pre-petition, as a result of which failure the judgment expired, was not a core proceeding. The court distinguished *In re SPI* on basis that the legal malpractice in *In re SPI* was "integrally related to the bankruptcy action since the dispute arose over the legal advice and actions taken by the lawyers handling the bankruptcy matter itself." *Id.* at 3.

163 F.3d 925, 932 (5th Cir.1999). On such reasoning, it has been suggested that malpractice claims against court-appointed professionals for post-petition conduct are *"per se* core." *See In re Kmart Corp.,* 307 B.R. 586, 593 (Bkrtcy.E.D.Mich.2004) (citing *In re Southmark* ). However, even in cases where the debtor's attorney is not court-appointed, the courts have consistently held that a claim against him for alleged malpractice in the bankruptcy proceeding will be found to be a core proceeding based on the "arising in" standard if the claim could have arisen only in the context of a bankruptcy case. *See, e.g., In re Simmons,* 205 B.R. at 841 n. 10 (citing, with approval, Susan Block–Lieb, *The Case Against Supplemental Bankruptcy Jurisdiction: A Constitutional, Statutory, and Policy Analysis,* 62 Fordham L. Rev. 721, 733 (1994), which asserted that " 'arising in' jurisdiction essentially imagined a 'but for' approach; had the bankruptcy not occurred, no claim could have existed").[4]

■ Galloway's malpractice claim against defendants falls well within this standard. His claim is based entirely on defendants' alleged failure to amend Galloway's bankruptcy schedules to disclose his personal injury lawsuit against Stinger, which was indisputably an asset of the bankruptcy estate. A debtor's duty to disclose all its assets to the bankruptcy court is prescribed by the Bankruptcy Code and is critical to the integrity of the bankruptcy process itself. Indeed, the debtor's violation of that duty, where not inadvertent, is tantamount to a fraud on the bankruptcy court. *See In re Krich,* 97 B.R. 919, 924 (Bkrtcy.N.D.Ill.1988); *cf. United States v.*

*Beard,* 913 F.2d 193, 197 (5th Cir.1990) (defendant "was under the duty to disclose to the court the existence of assets whose immediate status in the bankruptcy is uncertain" and his, failure to do so "constituted a fraud upon the court").

Addressing this duty, the Fifth Circuit has written the following:

> It goes without saying that the Bankruptcy Code and Rules impose upon bankruptcy debtors an express, affirmative duty to disclose all assets, including contingent and unliquidated claims. 11 U.S.C. § 521(1) ("The debtor shall-(1) file a list of creditors, and unless the court orders otherwise, a schedule of assets and liabilities, a schedule of current income and current expenditures, and a statement of the debtor's financial affairs"). "The duty of disclosure in a bankruptcy proceeding is a continuing one, and a debtor is required to disclose all potential causes of action". *Youngblood Group v. Lufkin Fed. Sav. & Loan Ass'n,* 932 F.Supp. 859, 867 (E.D.Tex. 1996)....
>
> Viewed against the backdrop of the bankruptcy system and the ends it seeks to achieve, the importance of this disclosure duty cannot be overemphasized. *See generally Oneida Motor Freight, Inc. v. United Jersey Bank,* 848 F.2d 414 (3d Cir.) (discussing importance of disclosure to creditors and to bankruptcy court), *cert. denied,* 488 U.S. 967, 109 S.Ct. 495, 102 L.Ed.2d 532 (1988).
>
> The rationale for ... decisions [invoking judicial estoppel to prevent a party who failed to disclose a claim in

---

**4.** The court notes that *In re White,* 172 B.R. 841, 842 (S.D.Miss.1994), relied on by plaintiff, is distinguishable because it involved a trustee's claim against debtor's attorneys for alleged *pre-petition* negligence, not for any alleged negligence in the bankruptcy case itself. *In re Remington Dev. Group, Inc.,* the only other case cited by plaintiff on this issue, involved a creditor's third-party complaint for indemnification against her own attorney, which she conceded was not a core proceeding. 180 B.R. 365, 368 n. 6 (Bankr.D.R.I. 1995). That case is thus also patently distinguishable.

bankruptcy proceedings from asserting that claim after emerging from bankruptcy] is that the *integrity of the bankruptcy system depends on full and honest disclosure by debtors of all of their assets.* The courts will not permit a debtor to obtain relief from the bankruptcy court by representing that no claims exist and then subsequently to assert those claims for his own benefit in a separate proceeding. *The interests of both the creditors, who plan their actions in the bankruptcy proceeding on the basis of information supplied in the disclosure statements, and the bankruptcy court, which must decide whether to approve the plan of reorganization on the same basis, are impaired when the disclosure provided by the debtor is incomplete.*

*Rosenshein v. Kleban,* 918 F.Supp. 98, 104 (S.D.N.Y.1996) (emphasis added).

*In re Coastal Plains, Inc.,* 179 F.3d 197, 207–208 (5th Cir.1999); *see also id.* (citing *Ryan Operations G.P. v. Santiam–Midwest Lumber Co.,* 81 F.3d 355, 358, 362 (3d Cir.1996) ("disclosure requirements are crucial to the effective functioning of the federal bankruptcy system"), and *Louden v. Federal Land Bank of Louisville (In re Louden),* 106 B.R. 109, 112 (Bankr. E.D.Ky.1989) ("[w]ithout ... disclosure [required by 11 U.S.C. § 521], the basic system of marshalling of assets and the resulting distribution of proceeds to creditors would be an impossible task")).

Manifestly, the alleged malpractice is "inseparable from the bankruptcy context" in which it arose. *See In re Southmark,* 163 F.3d at 931 (professional malpractice claim which is "inseparable from the bankruptcy context" is core proceeding). Consequently, mandatory abstention does not apply, and this court, therefore, has *discretion* under 28 U.S.C. § 1334(c)(1) and 28

U.S.C. § 1452(b) to decide whether to abstain from hearing the claim. *See id.*

Section 1334(c)(1) provides that "nothing in this section prevents a district court in the interest of justice, or in the interest of comity with State courts or respect for State law, from abstaining from hearing a particular proceeding arising under title 11 or arising in or related to a case under title 11." 28 U.S.C. § 1334(c)(1). Similarly, 28 U.S.C. § 1452(b) provides that "[t]he court ... may remand such claim or cause of action on any equitable ground." 28 U.S.C. § 1452(b).

"Courts have broad discretion when considering abstention or remand under these provisions, but usually consider a number of specific factors in reaching their decisions," including:

1. the effect or lack thereof on the efficient administration of the estate if the court recommends [remand or] abstention; 2. extent to which state law issues predominate over bankruptcy issues; 3. difficult or unsettled nature of applicable law; 4. presence of related proceeding commenced in state court or other nonbankruptcy proceeding; 5. jurisdictional basis, if any, other than § 1334; 6. degree of relatedness or remoteness of proceeding to main bankruptcy case; 7. the substance rather than the form of an asserted core proceeding; 8. the feasibility of severing state law claims from core bankruptcy matters to allow judgments to be entered in state court with enforcement' left to the bankruptcy court; 9. the burden of the bankruptcy court's docket; 10. the likelihood that the commencement of the proceeding in bankruptcy court involves forum shopping by one of the parties; 11. the existence of a right to a jury trial; 12. the presence in the proceeding of nondebtor parties; 13.

comity; and 14. the possibility of prejudice to other parties in the action.

*Sabre Technologies, L.P. v. TSM Skyline Exhibits, Inc.,* Civil Action No. H–08–1815, 2008 WL 4330897, 4–5 (S.D.Tex. Sept. 18, 2008) (citations omitted).

■ Plaintiff's principal argument in favor of remand is that this case involves only matters of state law and accordingly more properly belongs in state court. *See In re Lowenbraun,* 313 B.R. 408, 412 (Bankr.W.D.Ky.2004) (stating that "[m]alpractice is a state law tort no matter the forum in which the alleged malpractice may have occurred."); *In re Irwin,* 325 B.R. 22, 29 (M.D.Fla.2005) (recognizing that proceedings which involve solely matters of state law fall squarely within the special expertise of state courts, and should be remanded in the interest of comity and respect for state court decision-making capabilities). However, not only does plaintiff's malpractice claim against defendants involve alleged violation of duties imposed by the Bankruptcy Code, but the case as a whole, in view of defendants' collateral estoppel defense, raises' important issues of federal law involving whether preclusive effect is to be accorded this federal court's application of judicial estoppel *in the bankruptcy context* that was presented in plaintiff's lawsuit against Stinger. This consideration leads the court to decline plaintiff's request for discretionary abstention or equitable remand.

That brings the court to defendants' motion, which seeks summary judgment on the basis that plaintiff's claim against them is barred by collateral estoppel. Defendants take the position that this court's ruling in the *Stinger* case that Galloway's failure to disclose his lawsuit to the bankruptcy court was "blatant" and was not "inadvertent," operates as collateral estoppel in the present action. Defendants point out that because plaintiff herein must

prove that he would have been successful in the prosecution of his suit against Stinger but for his bankruptcy attorneys' negligence, then he necessarily must show that his lawsuit against Stinger would not have been dismissed but for the attorneys' negligence. They reason that because this court concluded that plaintiff failed in the underlying *Stinger* suit to show that he acted inadvertently in failing to disclose the existence of the suit to the bankruptcy court, and because the finding that plaintiff did not act inadvertently was essential to the court's ruling dismissing his case, and because the issue of responsibility for the failure to disclose was necessarily encompassed by that finding, it follows that plaintiff is collaterally estopped from suing his bankruptcy counsel to hold them accountable for failing to disclose the lawsuit.

■ "Collateral estoppel 'is limited to matters distinctly put in issue, litigated, and determined in the former action.'" *Next Level Communications LP v. DSC Communications Corp.,* 179 F.3d 244, 250 (5th Cir.1999). The Fifth Circuit has determined that " 'collateral estoppel encompasses three elements: (1) the issue at stake must be identical to the one involved in the prior action; (2) the issue must have been actually litigated in the prior action; and (3) the determination of the issue in the prior action must have been a necessary part of the judgment in that earlier action. Moreover, the legal standard used to assess the issue must be the same in both proceedings. However, the actual claims and the subject matter of each suit may differ." *Id.* (citations omitted). Further, "[c]ollateral estoppel will not apply ... if the party did not have a 'full and fair' opportunity to litigate the issue in the prior suit." *Sun v. U.S.,* 1994 WL 144643, 2 (5th Cir.1994) (quoting *Allen v. McCurry,* 449 U.S. 90, 95, 101 S.Ct. 411, 66 L.Ed.2d 308 (1980)). Thus, the relevant

questions for the court's determination are what this court actually decided in the *Stinger* case, whether that issue is identical to the relevant issue in this case, whether the issue formed a necessary part of this court's judgment in the *Stinger* action, and whether Galloway had the requisite "full and fair" opportunity to litigate the issue.

In response to defendants' motion, plaintiff submits that collateral estoppel cannot apply here because defendants' negligence in failing to disclose the *Stinger* lawsuit to the bankruptcy court was not at issue in the underlying suit and was not decided by the court. Plaintiff is incorrect. The issue of responsibility for the failure to disclose the *Stinger* lawsuit in plaintiff's bankruptcy case was at issue, and as a result of plaintiff's failure to come forward with proof to show that his attorneys were at fault—which he could (and should) have done—the court, by its finding that plaintiff did not act inadvertently, concluded that plaintiff was himself responsible for the omission.

This court recognized in *Stinger* that " '[a] court should apply judicial estoppel if: (1) the position of the party against which estoppel is sought is plainly inconsistent with its prior legal position; (2) the party against which estoppel is sought convinced a court to accept the prior position; and (3) the party did not act inadvertently.' " 446 F.Supp.2d at 657 (quoting *Jethroe v. Omnova Solutions, Inc.*, 412 F.3d 598, 600 (5th Cir.2005)). The court found all three circumstances were present. With specific reference to the third element, i.e., the requirement that the party had not acted inadvertently, the court observed that in response to Stinger's summary judgment motion, Galloway had failed to demonstrate that his failure to disclose his lawsuit against Stinger was inadvertent. The court wrote:

[T]here is no basis for concluding that Galloway's failure to disclose this litigation to the bankruptcy court was inadvertent. Indeed, in response to Stinger's motion, Galloway makes no attempt whatsoever to explain or excuse his blatant omission in this regard.

446 F.Supp.2d at 658.

The basis of plaintiff's malpractice claim against defendants is his allegation that he disclosed his personal injury suit against Stinger to defendants, that defendants promised they would amend his bankruptcy schedules to include the lawsuit, and that this was not done, as promised. Thus, the foundation of his claim against defendants is that they, and not he, are to blame for the fact that the lawsuit was not disclosed to the bankruptcy court—which is another way of saying, in effect, that his failure to disclose was inadvertent, in that it was not his fault, but rather due to the negligence of his bankruptcy attorneys.

However, this court's determination that Galloway did not act inadvertently in failing to disclose his lawsuit was essential to the court's finding in *Stinger* that he was judicially estopped from pursuing his claim, and this issue was necessarily resolved against plaintiff in the *Stinger* case because plaintiff failed to come forward with any proof (or even an argument) to show that his nondisclosure was inadvertent.

Under applicable law governing judicial estoppel in the bankruptcy context, "the debtor's failure to satisfy its statutory disclosure duty is 'inadvertent' only when, in general, the debtor either lacks knowledge of the undisclosed claims or has no motive for their concealment." *Coastal Plains*, 179 F.3d at 210. Galloway obviously knew about his lawsuit; thus, his failure to disclose the lawsuit could only

have been inadvertent if he had no motive for its concealment. This court's finding that Galloway did not act inadvertently was, in effect, a finding that he had a motive for concealment for summary judgment could not otherwise have been entered. Galloway's claim herein that he informed defendants of his lawsuit against Stinger and that he expected them to amend his bankruptcy schedules to include the lawsuit is entirely inconsistent with the court's finding that his failure to disclose the lawsuit was inadvertent. *See In re Waddell,* 314 B.R. 328, 338 (Bkrtcy. S.D.Miss.2004) (rejecting judicial estoppel because efforts by debtor and her attorney to inquire of her bankruptcy attorney whether the schedules needed to be corrected to list the claim were "inconsistent with any motive for concealment"). Confronted with Stinger's motion for summary judgment, it was incumbent on Galloway to come forward with proof that his failure to disclose the *Stinger* lawsuit to the bankruptcy court was inadvertent, since a motive for concealment otherwise seemed apparent. In order to avoid summary judgment on the basis of judicial estoppel, all Galloway would have had to prove was that his failure to disclose his lawsuit against Stinger to the bankruptcy court was inadvertent, which he could have done by presenting proof that he told his attorneys of the lawsuit and they failed to amend his schedules.

In summary, accepting as true the premise of plaintiff's claim against defendants herein, what caused the dismissal of plaintiff's lawsuit against Stinger was not plaintiff's bankruptcy attorneys' failure to schedule the lawsuit as an asset, but rather plaintiff's own failure to show to this court that he disclosed the lawsuit to his bankruptcy lawyers with the expectation that his schedules would be amended and yet his attorneys failed to appropriately amend his bankruptcy schedules. That is because if plaintiff, in fact, disclosed the lawsuit to his bankruptcy attorneys and with the understanding and expectation that they would amend his bankruptcy schedules to disclose the lawsuit, then plaintiff's failure to disclose the lawsuit would have been inadvertent.

Galloway undeniably had a full and fair opportunity to litigate the issue in the prior suit, and in particular, had the opportunity to present proof that his nondisclosure was inadvertent and thereby avoid summary judgment; he failed to avail himself of that opportunity, and as a result, he is now collaterally estopped from pursuing his claim herein. *Cf. In re Johnson,* 2007 WL 646376, 3 (S.D.Tex.2007) (ruling on summary judgment motion, whether opposed or not, will support application of collateral estoppel).[5]

**5.** In a few cases, the Fifth Circuit has indicated a fourth element of proof to support collateral estoppel, namely, that "there are no special circumstances that would render estoppel unfair or inappropriate." *Ash v. Guajardo,* 72 Fed.Appx. 143, 145, 2003 WL 21849924, 2 (5th Cir.2003) (citing *Gandy Nursery, Inc. v. United States,* 318 F.3d 631, 639 (5th Cir. 2003)); *Sun v. U.S.,* 1994 WL 144643, 2 (5th Cir.1994) (citing *Texas Pig Stands v. Hard Rock Cafe Int'l, Inc.,* 951 F.2d 684, 691 (5th Cir.1992)). The only arguably "special circumstance" plaintiff has suggested is defendants' failure to provide him with an affidavit in the *Stinger* case "owning up to their mis-

take" in failing to disclose the lawsuit to the bankruptcy court. Plaintiff contends that he lost on summary judgment because defendants refused to cooperate with him and his counsel by providing such an affidavit and that it would be unfair to reward defendants for this "egregious conduct." However, in the court's opinion, whether or not Galloway's bankruptcy attorneys were cooperative in the Stinger case is ultimately not material because plaintiff did not need an affidavit from defendants to avoid summary judgment. There was nothing to prevent Galloway from submitting *his own affidavit* attesting that he informed defendants of his lawsuit and that

Based on the foregoing, it is ordered that plaintiff's motion to remand and/or abstain is denied, and it is further ordered that defendants' motion to dismiss is granted.

A separate judgment will be entered in accordance with Rule 58 of the Federal Rules of Civil Procedure.

they failed to amend his bankruptcy schedules, despite their assurances this would be done. Not only did he fail to present any proof to this effect, he failed to even inform the court of his position in this regard. This is the reason he lost on summary judgment, not because defendants would not provide him an affidavit.